A.    **Trial Counsel Was Ineffective Because He was not Sufficiently Familiar with Case Precedent to Permit Petitioner to Make His Own Informed, Knowing and Voluntary Choice to Go to Trial or to Plead Guilty.**

By his own admission, see Affidavit of Bernard Grossberg, attached ("Grossberg Affidavit"), Tab 3, ¶¶ 7-8, trial counsel was not adequately familiar with the relevant case law on the requirements of proof for the commerce clause nexus in the context of an 18 U.S.C. §844(i) prosecution, nor with how precedent cited by the government might be factually distinguished.

**Jones v. United States**

The critical case is Jones v. United States, 529 U.S. 848 (2000). That case held, in pertinent part, that §844(i) contains a limited, not an expansive, exercise of jurisdiction under the commerce clause of the constitution. 529 U.S. at 854. This results from the presence in the statute of the word "used" to qualify the phrase "in interstate commerce or in an activity affecting interstate commerce". Whereas employment of just the latter phrase would evince a congressional intent to exercise the widest sweep of its legislative authority under the commerce clause, the insertion of the word "used" qualifies and narrows that exercise of authority. Jones, 529 U.S. at 854.

11

Consequently, after Jones, any "use", whether directly in the stream of interstate commerce or simply in an activity affecting interstate commerce, must be something more than de minimis. See e.g. United States v. Davies, 394 F.3d 182, 189 (3d Cir. 2005)("The [Supreme] Court [in Jones] thus rejected the Government's proposed expansive construction of §844(i) under which any sort of de minimis connection between interstate commerce and a building would suffice to make its destruction a federal crime under §844(i)."; United States v. Craft, 484 F.3d 922, 928 (7th Cir. 2007)("...where a property is actively employed for commercial purposes, the interstate commerce element may be met if the connection to interstate commerce is both continuing and substantial.", citing other circuit decisions as well); see also Jones supra n. 8. (noting with favor the fact that the Court in Russell v. United States, 471 U.S. 858, 862 (1985), as in Jones, did not adopt the expansive reading of §844(i)'s commerce language urged by the government).

In Jones the court defined "use" as contained in §844(i) in the ordinary, common sense meaning of the term. That is, it means an active, current, employment for commercial purposes, not merely a passive, passing, or past connection to commerce". Jones 529 U.S. at 855. As expressed in Jones, the government in a §844(i) prosecution must show that the particular piece of damaged property was in active use at the time of the infliction

12

of the damage and that such use, in turn, was directly in interstate commerce or in an activity affecting interstate commerce. Id.

Prior to Jones, prosecutors and trial judges took it for granted that all that was necessary to satisfy the jurisdictional element of the federal arson statute was a de minimis connection to interstate commerce. See e.g. cases cited at Davies, supra, 394 F.3d at 190 and n. 6. It is likely that trial counsel was laboring under the impression that such a limited showing of the commerce nexus was all that was required in petitioner's case as well.

Alternatively, perhaps counsel simply accepted the government's claim that the portable toilet was rental property and therefore, under cases cited by the prosecution, i.e. United States v. Logan, 419 F.3d 172 (2d Cir. 2005), United States v. Williams, 299 F.3d 250 (3rd Cir. 2002), and, most importantly, United States v. Russell, supra, opposition was futile.

**Application to Defense Counsel's Performance.**

It is apparent that counsel could not render adequate advice in this context without, a) stressing the government's burden of proof of a current, active, substantial use of the portable toilet in an activity affecting interstate commerce, and b) that there was a sound factual basis to distinguish Russell, Logan, and Williams. That he did neither is reasonably inferred from

13

his conduct at the Rule 11 hearing and his initial response to the Presentence Report.

At the plea hearing, he said nothing when the prosecutor listed attenuated, passive connections to commerce (place of manufacture, interstate shipment of the toilet, use of same by travelers on nearby state road) as factual grounds for accepting defendant's guilty plea.  Plea Tr. 29-30, 31-33.  His opening objection to the PSR was a belated, post-plea attempt to put the commerce issue in play by claiming, without any detailed support, that the rental of the toilet was a purely intrastate activity. In doing so, he noted that he was waiting for a response from the prosecutor, "in order to take a definitive position of this issue."  See Tab 5 (Letter dated April 9, 2007, Bernard Grossberg to Probation Office, second paragraph [excerpt]).  The government's response was understandably puzzled.  "The defendant's objection to the legal basis for his plea is a curious one.  The defendant has pleaded guilty to the crime, but now appears to claim that he did not commit the crime charged." Tab 5 (Letter, David A. Ring, AUSA, to Probation Office, April 13, 2007, ¶ 1 [excerpt]).  It then repeated the same bases for the commerce nexus advanced at the Rule 11 hearing, i.e. rental property, out-of-state manufacture, and use by travelers.  Id. The record contains no reply by defense counsel.

Both attorney Grossberg and defendant/petitioner affirm in

14

their affidavits (Tabs 2 and 3) that advice regarding the more than *de minimus* requirement of <u>Jones</u> and the factual information regarding the non-rental character of the portable toilet in question, <u>see</u> <u>infra</u>, were not given to the defendant.  Grossberg Affidavit, ¶¶ 6-9, Forest Affidavit, ¶¶ 6-7.  Tabs 3 and 2, respectively.

Counsel has a professional obligation to adequately inform his client about the considerations that are relevant to his client's decision to accept or deny a plea bargain.  <u>Davis v. Grenier</u>, 428 F.3d 81, 88 (2d Cir. 2005).  Failure to do so may be ineffective assistance under the Sixth Amendment.  <u>See</u> <u>e.g.</u> <u>United States v. Gordon</u>, 156 F.3d at 376, 380 (2d Cir. 1998) (failure to reasonably advise of the comparative sentencing exposure of trial versus plea held ineffective).  Surely, adequate knowledge of the factual quantum of proof necessary to meet the commerce nexus in a federal arson indictment is such a consideration.  Defense counsel did not meet that obligation because he did not explain to petitioner the criteria established by <u>Jones</u> beyond the former *de minimis* standard.  By February, 2007 when the petitioner entered his guilty plea, <u>Jones</u> had been binding precedent for almost seven years.  Counsel further did not fulfil that obligation because he was unable to advise petitioner that the portable toilet was reasonably classifiable as personal but not rental property.  <u>See</u> discussion under

15

Failure to Investigate, _infra_.  Without this information, petitioner could not make an informed, knowing and voluntary decision to plead or go to trial.

This failure to inform cannot be justified as a reasonable defense strategy.  There is no strategic advantage in having an uninformed client plead guilty.  The consideration of a government recommendation for the minimum statutory term of imprisonment and dismissal of all charges but count 7 do not change that conclusion.  It is for the client to make the ultimate decision whether such considerations are worth foregoing putting the prosecution to its burden of proof.  A client who does not reasonably understand what that burden is has received constitutionally inadequate legal assistance.  That is what occurred in the instant case.

### B.  Counsel's Failure to Investigate was Ineffective Assistance.

The prosecution's main proof of the commerce nexus was its allegation that the portable toilet was rental property and thus used in an activity affecting interstate commerce.  Both at the plea hearing and in its brief disquisition on the commerce nexus in response to counsel's untimely objection to the jurisdictional element in the PSR, _see_ pp. 13-14, _ante_, the government stressed the rental property nexus and the _Logan_ and _Williams_ cases.  Both these cases involved rental real estate.  And both were

16

undoubtedly controlled by the Supreme Court's 1985 Russell decision holding that "The rental of real estate is unquestionably such an activity [affecting interstate commerce]." 471 U.S. at 862.  There the court recognized, indeed, assumed, that the "local rental of an apartment unit is merely an element of a much broader commercial market in rental properties."  Id.

Such precedent would be daunting and a significant factor in deciding on a trial or plea in the context of this case except for one unsettling qualification.  The pertinent facts are different in the instant case.  The portable toilet was, in fact, not rental property at all.  This has been determined post judgment by petitioner's investigation.  Joseph Lutz, a private investigator based in Boston, made several inquiries of the owner of the port-a-potty involved in count 7, A Royal Flush, Inc., a Connecticut business corporation.  His investigation revealed that the toilet cannot be rented without a service contract:

> "A Royal Flush, Inc. will "service" the port-a-potties once each week for the duration of the agreed-upon period.  "Service" means that a truck from A Royal Flush, Inc., will appear once each week and empty the port-a-potties of waste. ...I was told that servicing the port-a-potties was part of the standard agreement and that A Royal Flush, Inc., did not provide units without servicing them.  In other words, I was unable to rent a unit without also having it serviced by A Royal Flush.  The only time A Royal Flush, Inc., would provide a unit and not service it was for a one- or two-day event where servicing wouldn't be required."

Affidavit of Joseph B. Lutz, Tab 4 (emphasis supplied).

Thus, the portable toilet is more aptly characterized as

17

personal property adjunct to a service contract. That is categorically different from rental property, let alone rental real estate. Without the service component, the toilet is not available to rent or lease, except in the very limited instance of a one or two day usage for a special event or party. The latter use was clearly not how the toilet on the water company property was employed. By the government's own admission it had been available to hikers and passing motorists. It is reasonable to infer that means a long term contract which precludes a strict rental arrangement. The primary use of the toilet, then, was as personal property associated with a service contract. An analogy to trash removal may be apt. One doesn't rent a trash dumpster, but pays for a service, trash collection, which is provided, in part, through the use of the personal property which is the container itself. One pays for an ongoing service the means to accomplishing which is an item of personal property placed at a particular location to provide the service.

That said, whether such an activity, undoubtedly commercial in character, has, or had in the present case, a continuing and substantial effect on interstate commerce is not known. Suffice it to say that the factual reality does not support the primary basis proffered by the government for the required commerce nexus in petitioner's underlying case.

Defense counsel admits that his limited investigation of A

18

Royal Flush, Inc. did not yield this information about the terms of its servicing contracts. Grossberg Affidavit, Tab 3, ¶ 6. A failure to reasonably investigate where the circumstances of a case require a particular scope of the investigation can be a violation of the competence reasonably expected of defense counsel. See generally Strickland, 466 U.S. at 691. The failure to focus on the nature of the use of the portable toilet in the instant case was such a violation.

### C.    Petitioner/Defendant Was Prejudiced by Counsel's Deficient Performance.

The two-part Strickland test for a Sixth Amendment violation of the right to reasonably effective counsel applies in the change of plea context. Hill, supra, 474 U.S. at 52. The second part, the prejudice prong, "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Id. To satisfy this requirement, petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.

Petitioner submits that he can do so in this case. He asserts the same in his affidavit. See ¶¶ 9-10, Tab 2. His position is reasonably taken. Although, whether counsel would have advised going to trial based on the evidence uncovered in the Lutz affidavit is relevant, and counsel's affidavit does not

19

address that point, it is clear that the defendant would have insisted on trial based on the same information coupled with a competent explanation of the government's burden of proof.  It is the defendant who must make the ultimate decision.  He maintains that he would have gone to trial.  This is so even if the remaining charges were not to be dismissed.  On this issue, he is on solid ground.  Jones makes clear that abandoned property (4 counts) and property with too attenuated a connection to interstate commerce, i.e. the street sign (2 counts) would almost certainly not support a §844(i)conviction in this case.  The other 3 counts also dealt with portable toilets.  For that reason, it is likely they would have had the same questionable nexus as the toilet in count 7.  All these factors combine to make it reasonably probable that petitioner would not have pled guilty but would have elected to go to trial and force the government to its proof but for counsel's ineffectiveness.

## II.  Judicial Estoppel

This Court should invoke the doctrine of judicial estoppel against the government in this §2255 action.  Specifically, the government should be estopped in this proceeding from asserting any factual basis for the necessary commerce nexus other than the specific facts it urged the Rule 11 court to accept at petitioner's change of plea hearing on February 12, 2007.

20