UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE FOREST, | : | |
|     Petitioner, | : | CIVIL ACTION NO.: |
| | : | 3:08-cv-777 (JCH) |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | DECEMBER 18, 2008 |
|     Respondent. | : | |

**RULING RE: MOTION TO VACATE, SET ASIDE,**
**OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

On February 12, 2007, petitioner, Bruce Forest, pleaded guilty to one count of destruction of property by use of an explosive device, a violation of 18 U.S.C. § 844(i). On May 23, 2007, this court sentenced Forest to a term of imprisonment of 60 months, which he is currently serving. Forest brings the current Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 1) pursuant to 28 U.S.C. § 2255, on the grounds that his guilty plea was not knowing and voluntary due to the constitutionally ineffective assistance provided by his counsel.

The respondent, the United States of America (the "government"), opposes Forest's Motion, arguing that Forest does not meet the standard for ineffective assistance of counsel as set forth in Strickland v. Washington, 466 U.S. 668 (1984). The court agrees. For the reasons that follow, the petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 1) is **DENIED**.

**I.  BACKGROUND**

The relevant facts are not in dispute. A fourteen count indictment was returned against Forest on May 11, 2006. See Doc. No. 2 in United States v. Forest, 3:06-cr-129

(JCH). The indictment charged Forest with seven counts of malicious damage to, and destruction of, property used in an activity affecting interstate commerce by an explosive device, in violation of 18 U.S.C. § 844(i); and seven counts of the use and discharge of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1). Id. The indictment emanated from allegations that, using a high powered rifle and explosive chemicals, Forest caused a series of small blasts in Norwalk, Weston, and Redding, Connecticut that damaged portable toilets, a road sign, the window of an abandoned gas station, and the front door of an abandoned school. Id. Throughout the criminal case that followed this indictment, Forest was represented by Attorney Bernard Grossberg. Affidavit of Bernard Grossberg ("Grossberg Affidavit"), Attachment 5 to Petitioner's Motion ("Ptr. Mot."), at 1.

On February 12, 2007, pursuant to a plea agreement with the government, Forest pleaded guilty to Count Seven of the indictment, which charged him with destruction of a portable toilet in Weston, Connecticut, on or about February 21, 2006. Change of Plea Hearing Transcript ("Plea Tr.") at 37. The remaining counts were dismissed on the government's motion after sentencing. Sentencing Hearing Transcript ("Sent. Tr.") at 43.

During the plea colloquy, the government informed the court that the toilet had been purchased from its manufacturer in Minnesota and transported to Connecticut. Plea Tr. at 29. The toilet's owner, A Royal Flush, Inc. ("Royal Flush"), headquartered in Bridgeport, Connecticut, then rented the toilet to the Aquarion Water Company ("Aquarion"), which provides water utility services in the region. Id. at 29, 32. As the government stated at the plea colloquy, Aquarion placed the toilet on its lands "for

persons who hiked in those lands and for persons who stopped their car at the roadway for the purpose of using a portable potty." Plea Tr. at 29. The court then expressly asked the government to describe, "how . . . the property [i.e., the toilet, was] used in interstate commerce or in an activity affecting interstate commerce?" Id. at 31. The government responded that, according to United States v. Logan, 419 F.3d 172 (2d Cir. 2005) and United States v. Williams, 299 F.3d 250 (3d Cir. 2002), the fact that a building is rental property is sufficient to prove that the property is used in interstate commerce or an activity affecting interstate commerce.[1] Id. at 31-32. The government also noted that the portable toilet was located on Connecticut Route 53, was visible from the road, and was accessible to the public traveling on that road.[2] The court accepted the government's representation, and neither the petitioner nor Attorney Grossberg objected to the government's recitation of the facts or the law. Id. at 33. Forest then admitted his guilt to Count Seven without equivocation.[3] Id. at 37.

---

[1] Logan and Williams are progeny of Jones v. United States, 529 U.S. 848 (2000), a Supreme Court decision that addressed the interstate nexus requirement for the purposes of federal jurisdiction over violations of 18 U.S.C. § 844(i). The Jones decision, and a possible complete defense for Forest based on that decision, form the crux of the instant Motion. They will be discussed at length in Part III, B, infra at 9-13.

[2] Route 53 is a state highway connecting the cities of Norwalk and Danbury, Connecticut. The south terminus of Route 53 is an intersection with United States Highway 1 (US 1), which runs over 2,000 miles from Florida to Maine, and the north terminus is an intersection with Interstate Highway 84 (I-84), which extends from Pennsylvania to Massachusetts.

[3] Forest's plea agreement contained a waiver of his right to directly appeal or to collaterally attack his conviction or sentence. A knowing and voluntary waiver of the right to collaterally attack a conviction or sentence is generally enforceable. See Garcia-Santos v. United States, 273 F.3d 506, 508 (2d Cir. 2001). However, a waiver is unenforceable if the petitioner can prove that, because his counsel's advice was ineffective, his waiver was not knowing and voluntary. See Parisi v. United States, 529 F.3d 134, 138-139 (2d Cir. 2008). Consequently, the disposition of Forest's waiver of his right to collaterally attack his conviction and sentence, and therefore his right to bring the present Motion, depends on the analysis of his ineffective assistance claim. As a result, a separate inquiry into Forest's right to collaterally attack his conviction and sentence is not necessary.

Following Forest's guilty plea, the United States Probation Office prepared a Pre-Sentence Report ("PSR"), dated March 27, 2007.  See PSR.  A few days later, on March 30, 2007, Attorney Grossberg wrote to the United States Attorney's Office and asked, "[i]f the property in question [i.e., the portable toilet] was owned by a Connecticut corporation and 'rented' to another Connecticut entity, [could there be] an interstate commerce nexus?"  On April 9, 2007, Attorney Grossberg wrote another letter, this time to Probation Officer Patrick Norton, noting that "I have raised [the question of interstate commerce nexus] with Assistant District Attorney [sic] David Ring and I am presently waiting for his response in order to take a definitive position on this issue.  Consequently, at this time, this fundamental issue has not been resolved."  Letter from Attorney Grossberg to Officer Norton, Attachment 7 to Ptr. Mot., at 1.  On April 13, 2007, the government responded to Attorney Grossberg and the Probation Office with the following:

> The law is clear that destruction of rental property is sufficient to establish that the defendant destroyed property that was used in an "activity affecting commerce," as required by the statute.  United States v. Logan, 419 F.3d 172 (2d Cir. 2005); accord United States v. Williams, 299 F.3d 250 (3d Cir. 2002).  There is no requirement that the person who owns the rental property be located out of State, and the defendant can cite no case to support such a position.  Moreover, here, not only did the defendant destroy rental property, but each time he did so the property had to be replaced with property that was manufactured out of state.  And, the property, at least in part, serviced people who were traveling.

Letter from AUSA Ring to Officer Norton, Attachment 7 to Ptr. Mot., at 2 (emphasis in original).

On May 23, 2007, the court sentenced Forest to the statutorily mandated minimum term of 60 months imprisonment.  Sent Tr. at 36.  Forest filed a notice of

-4-

appeal on June 11, 2007, which was dismissed by joint stipulation of the parties on November 8, 2007.  See Doc. No. 69 in United States v. Forest, 3:06-cr-129 (JCH).  Forest filed the instant Motion to Vacate on May 20, 2008.  See Doc. No. 1.

## II. STANDARD OF REVIEW

"Because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack."  Ciak v. U.S., 59 F.3d 296, 301 (2d Cir. 1995) (internal citation omitted).  "As a general rule, relief is available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Napoli v. United States, 32 F.3d 31, 35 (2d Cir. 1994) (internal citations and quotation marks omitted).

In his Motion, Forest claims his guilty plea was not knowing and voluntary due to the ineffective assistance of Attorney Grossberg.[4]  An ineffective assistance of counsel claim is cognizable even when a defendant pleads guilty.  See Hill v. Lockhart, 474 U.S. 52, 58 (1985).  However, an ineffective assistance claim survives a guilty plea only where the claim concerns the advice the defendant received from counsel in connection with that plea.  See Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008) (holding that, by focusing on the advice the defendant received from his attorney, the

---

[4]"The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.  For that reason, the Supreme Court has recognized that the right to counsel is the right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 685-686 (U.S. 1984) (internal quotation omitted).

defendant's claim that his attorney was ineffective in advising him to accept the plea agreement "connects the alleged ineffectiveness of [the] attorney with the voluntary nature of [the] plea"). Forest's Motion is precisely such a claim.

In reviewing a Motion such as Forest's, courts are to apply the familiar test of Strickland v. Washington, 466 U.S. 668 (1984), modified for the plea context. Accordingly, for a petitioner to succeed on an ineffective assistance of counsel claim after pleading guilty, he must show: 1) that counsel's performance fell below an objective standard of reasonableness; and 2) a reasonable probability that, but for his attorney's deficiency, he would not have pled guilty but, rather, would have insisted on going to trial. See Hill, 474 U.S. at 57-58, 59; see also, Panuccio v. Kelly, 927 F.2d 106, 108 (2d Cir. 1991). The petitioner bears the burden of proving both of these elements. Kimmelman v. Morrison, 477 U.S. 365, 381 (1986).

## III. DISCUSSION

Forest attacks his judgment and sentence on two grounds: 1) that his guilty plea was defective because it was not knowing and voluntary; and 2) that Attorney Grossberg provided constitutionally ineffective assistance by: a) failing to advise him of a possible complete defense; and b) failing to investigate the factual basis for that defense. The two grounds, however, are intertwined. Forest argues that the sole reason his guilty plea was unknowing and involuntary is because, due to Attorney Grossberg's ineffective assistance, he was unaware that the law provided him with a potential complete defense (i.e., that the portable potty he admittedly destroyed had no nexus to interstate commerce). Consequently, the disposition of Forest's Motion essentially rests on his ineffective assistance claim. That claim will be analyzed

-6-

through the two-part test outlined above.  See Strickland v. Washington, 466 U.S. 668 (1984); Hill v. Lockhart, 474 U.S. 52, 58 (1985).

    A. Counsel's Performance

To satisfy the first prong of the two-part test set forth in Strickland, a petitioner must show that his counsel's representation fell below an objective standard of reasonableness.  See United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001).  An attorney's performance may be said to fall below an objective standard of reasonableness when a petitioner demonstrates that, "under the totality of the circumstances, [the attorney] failed to exercise the skills and diligence that a reasonably competent attorney would provide under similar circumstances."  Boria v. Keane, 99 F.3d 492, 496 (2d Cir. 1996).  The Second Circuit has repeatedly "declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised."  See Loliscio v. Goord, 263 F.3d 178, 195 (2d Cir. 2001).

In the present case, Forest argues that Attorney Grossberg's performance fell below an objective standard of reasonableness because: 1) he failed to advise Forest of a possible complete defense based on a challenge to the interstate commerce nexus; and 2) he failed to investigate the possibility that the portable toilet was personal property rather than rental property.  Both arguments, however, are without merit.

Forest's first argument – that Attorney Grossberg should have advised him of a potential defense based on the lack of an interstate commerce nexus – is unpersuasive.  For the reasons set forth in Part III, B, infra at 9-13, such a defense would not succeed.  Moreover, Attorney Grossberg considered challenging the

interstate commerce nexus and concluded that such a challenge would be futile. See Grossberg Affidavit at 1. This court knows of no authority requiring an attorney to advise a client in a criminal case of potential defenses the attorney has reasonably considered and correctly discarded. Nor does Forest cite any. As a result, Forest has failed to meet the first requirement of the Strickland standard as to his failure-to-advise claim.

Forest's second claim, that Attorney Grossberg failed to adequately investigate the interstate commerce nexus, is not supported by the relevant law or facts. The Supreme Court has held that the duty to investigate is essential to the adversarial testing process "because the testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies." Kimmelman v. Morrison, 477 U.S. 365, 384 (1986). The duty to investigate requires counsel to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. See Strickland, 466 U.S. at 691; Lindstadt v. Keane, 239 F.3d 191, 200-202 (2d Cir. 2001). It does not, however, "compel defense counsel to investigate comprehensively every lead or possible defense," Greiner v. Wells, 417 F.3d 305, 320-321 (2d Cir. 2005), or to "scour the globe on the off-chance something will turn up," Rompilla v. Beard, 545 U.S. 374, 383 (2005). "Reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." Id.

In the present case, Attorney Grossberg states in his affidavit that he "conducted basic research" regarding the interstate commerce nexus issue, and "considered challenging the interstate commerce nexus regarding the portable toilet." Grossberg

Affidavit at 1-2. However, "after speaking to personnel at the company that owned the toilet, A Royal Flush, Inc., of Bridgeport, Connecticut, [he] concluded that such a challenge would be futile." Id.

Forest offers no evidence to contradict Grossberg's testimony. Rather, he focuses on Grossberg's statements that he was "not thoroughly familiar with" the decision in Jones v. United States, 529 U.S. 848 (2000), and that he "did not assess" that Forest's case could be distinguished because it involved "personal property adjunct to a service contract." Grossberg Affidavit at 1-2. Yet, as noted above, the fact that Attorney Grossberg did not "investigate comprehensively every lead or possible defense," does not, by itself, cause his performance to fall below the objective standard of reasonableness. Greiner v. Wells, 417 F.3d 305, 320-321 (2d Cir. 2005). Attorney Grossberg identified a legal issue that might have led to a defense (i.e., the necessity of an interstate or foreign commerce nexus), undertook an investigation of that issue (i.e., conducted basic legal research and spoke with a representative of Royal Flush), and concluded that a challenge based on that issue would be futile. See Grossberg Affidavit at 1-2. He thus exercised the skills and diligence that a reasonably competent attorney would provide under similar circumstances. See Strickland v. Washington, 466 U.S. 668, 690-691 (1984) (holding that, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation"). The fact that Attorney Grossberg chose not to pursue a defense based on the holding in Jones v. United States, 529 U.S. 848 (2000) – which, as

discussed below, would have failed anyway – does not render his performance constitutionally defective. Consequently, Forest's claim of ineffective assistance based on Attorney Grossberg's alleged failure to investigate is without merit.

B. Prejudice

However, even had Forest satisfied the first prong of the Strickland standard on his failure-to-advise and failure-to-investigate claims, he would still fail to satisfy the second. To satisfy the second requirement, a petitioner must show that he was prejudiced by counsel's ineffective assistance. See Strickland v. Washington, 466 U.S. 668, 687 (1984). In the plea context, this means a petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. See United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001).

In cases such as Forest's, "[w]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial."[5] Hill v. Lockhart, 474 U.S. 52, 59 (1985). This is because, as the Supreme Court has held, in instances where the potential defense in question might have succeeded, it is safe for the court to assume that a rational defendant would have insisted on going to trial. See Roe v. Flores-Ortega, 528 U.S. 470, 486 (2000). For the reasons that follow, however, the potential defense

---

[5]Because Forest's failure-to-investigate claim is predicated on the theory that, had Attorney Grossberg made adequate investigation, he would have discovered the basis for a defense based on the interstate commerce nexus, an analysis of that defense will satisfy the prejudice inquiry for both the failure-to-investigate and failure-to-warn claims.

Forest now raises would have failed, and thus he does not satisfy the prejudice requirement of the Strickland standard. See Strickland v. Washington, 466 U.S. 668, 687 (1984).

At the plea colloquy, when the court inquired as to the portable toilet's nexus to interstate commerce, the government focused on the fact that the toilet was rental property, and the fact that, according to United States v. Logan, 419 F.3d 172 (2d Cir. 2005), the destruction of property rented out by its owner "unquestionably" falls within the scope of 18 U.S.C. § 844(i). In the present Motion, Forest argues that the portable toilet "is more aptly characterized as personal property adjunct to a service contract," which, he argues, "is categorically different from rental property, let alone rental real estate." Ptr. Mot. at 17-18. The foundation for Forest's argument is the affidavit of Joseph B. Lutz, a private investigator hired by Forest. Lutz spoke with two customer service representatives from Royal Flush, who told him that he was "unable to rent [a portable toilet] without also having it serviced by A Royal Flush." Affidavit of Joseph B. Lutz ("Lutz Affidavit"), Attachment 6 to Ptr. Mot., at 1.

The court agrees that the facts of the present case are different from those in United States v. Logan, 419 F.3d 172 (2d Cir. 2005). In Logan, the defendant was charged with damaging real property, a fraternity house, that was rented to tenants at the time of the damage. A fraternity house has characteristics quite distinct from a portable toilet. The court, however, need not engage in an inquiry as to whether the portable toilet was "rental property" like the fraternity house (as the government suggests) or personal property adjunct to a service contract (as Forest suggests), because the outcome is irrelevant to the likelihood of success of the defense. Even if

the court were to accept Forest's argument that the portable toilet is personal property rather than rental property – an issue upon which the court takes no position – section 844(i) would still apply.

Section 844(i), of Title 18 of the United States Code, makes it a federal crime to, "maliciously damage or destroy, or attempt to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or <u>personal property</u> used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." In <u>Jones v. United States</u>, 529 U.S. 848 (2000), the Supreme Court addressed the issue of a nexus to interstate or foreign commerce for the purposes of section 844(i). The Court held that the phrase, "used in an activity affecting commerce," for purposes of § 844(i), required "active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce." <u>Id.</u> at 855. Applying this definition, the Court held that a defendant could not be convicted of violating § 844(i) for damaging a private residence "owned and occupied . . . for everyday family living." <u>Id.</u> at 859.

In the present case, however, it is clear that, whether personal property or rental property, the portable toilet was actively employed for commercial purposes. The toilet sat by the side of the road because of an ongoing business contract between Royal Flush and Aquarion.[6] Further, at the time Forest destroyed the portable toilet, Royal

---

[6]Further, while Royal Flush is a privately owned Connecticut corporation, it services customers from Massachusetts to Delaware. Aquarion is a subsidiary of the Aquarion Company, which is one of the ten largest investor-owned water utilities in the United States, providing water utility services to customers in four states. What is more, the Aquarion Company is owned by Macquarie Bank Limited, a leading Australian investment bank with a presence in 23 countries. While these facts did not come out at the change of plea hearing, this information is publicly accessible on Royal Flush and Aquarion's websites, and the government would likely have introduced it had Forest gone to trial and challenged the commerce nexus.

Flush was generating revenue from the toilet's continued presence on Aquarion's property. Even without the facts that the portable toilet was manufactured out of state, serviced travelers, and had to be replaced with a toilet manufactured out of state, section 844(i) would still apply. The Supreme Court has firmly established Congress' power to "regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." Gonzales v. Raich, 545 U.S. 1, 17 (2005). Royal Flush's supply of a portable toilet to Aquarion is just such an activity.[7] Consequently, the court concludes that a challenge to the interstate commerce nexus would have failed as a defense had Forest gone to trial, and therefore he has not shown that he was prejudiced by Attorney Grossberg's performance. See Hill v. Lockhart, 474 U.S. 52, 59 (1985).

## III. CONCLUSION

For the reasons set forth herein, the petitioner's Motion to Set Aside, Vacate, or Correct Sentence (Doc. No. 1) is **DENIED**. Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. The Clerk is directed to enter judgment and close this case.

---

[7] According to the U.S. Census Bureau, in 2006 the septic tank and related services sector had an estimated revenue of $2.5 billion, while the broader waste management and remediation industry had an estimated revenue of $70.6 billion. U.S. Bureau of the Census, Service Annual Survey: 2006, Table 7.1 (2008), available online at http://www.census.gov/svsd/www/services/sas/sas_data/sas56.htm.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 18th day of December, 2008.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge